Vandermark agt. Vandermark.

## SUPREME COURT.

ALBERT S. VANDERMARK, administrator, &c., of ABRAHAM VANDERMARK, agt. GEORGE W. VANDERMARK.

*Gift mortis causa — upon what facts sustained.*

The deceased, during his lifetime, had made a deposit in the Ulster County Savings Institution to the credit and in the name of the defendant, his son. He had been accustomed, whilst living, to stop with one G. C. V. When the deceased was about seventy-three years of age, and about two weeks before his death, he was leaving the house of said G. C., and complained of his health and said he should not live long. He further said, leaving with George C. the box which contained the bank-book, "that he intended that for the defendant and that G. C. must let no other person have it, except there was five dollars for S." In about two weeks from this time the deceased died. He said to another witness "he had money in the bank for his son George ; the reason why he had done this was, he had given a farm to M. and he did not like him. He had done for the rest, and never done any thing for George." The key to the trunk which contained the bank-book, was found in the pocketbook of the deceased after death.

*Held,* that this was a valid gift *mortis causa* and must be upheld.

ACTION tried at Ulster circuit in January, 1878, without a jury.

*Van Etten & Clearwater,* for plaintiff.

*F. L. Westbrook* and *Mr. Vanderlyn* for defendant.

WESTBROOK, *J.* — The suit is brought to recover moneys drawn from the Ulster County Savings institution by the defendant, after the death of Abraham S. Vandemark. The defendant claims them by gift from the intestate.

Abraham, during his lifetime, had made a deposit in the

Ulster County Savings Institution, to the credit and in the name of the defendant. He had been accustomed, whilst living, to stop with one George C. Vandemark. When the deceased was about seventy-two or seventy-three years of age, and about two weeks before his death, he was leaving the house of said George C., and complained of his health, and said he would not live long. He further said, leaving with George C. the box which contained the bank-book: "That he intended that for the defendant, and that I must let no other person have it, except there was five dollars for Sime." In about two weeks from this time the deceased departed this life. To another witness, he said: "He had money in the bank for his son George. The reason why he did this was, he had given a farm to Morey, and he did not like him. He had done for the rest, and never done any thing for George." The key to the trunk which contained the bank-book was found in the pocket-book of the deceased after death. The question is, upon these facts, can a gift to the defendant be sustained?

In *Grymes* agt. *Hone* (49 *N. Y.*, 17) the following facts appeared: The deceased made and executed to the donee a written assignment of shares of stock in the Bank of Commerce of New York city. "After this paper had been signed 'he kept it by him for awhile' (how long no where appears) and afterward handed it to his wife to put with the will, and other papers, in a tin box she had. When he gave to his wife the paper so drawn, he said: 'I intend this for Nelly. If I die, don't give this to the executors; it isn't for them, but for Nelly; give it to her, herself.' She asked, 'Why not give it to her now?' 'Well,' he said, 'better keep it for the present; I don't know how much longer I may last, or what may happen, or whether we may need it.'   *   *   *   It was admitted that, at the time of executing said instrument, the donor was in failing health, and so continued until his death, January 23, 1868." The court held this a valid gift *mortis causa.*

The case cited is no stronger than the one before us. The deposit of the money in the bank to the credit of the donee was, certainly, as strong evidence of the intent to make the gift as the drawing of the assignment in the other. Perhaps stronger, for it probably put it out of, and beyond the control of the donor. It is true that, by the usage of the bank, the book, which the old gentleman retained, might have drawn the money. If the bank, however, had seen fit to retain the money for the donee, would it not have been justified in so doing? Or, if the donee had gone to the bank and claimed it, would the bank have been justifiable in paying it elsewhere? I would be inclined to answer both the questions in favor of the donee (*Millspaugh* agt. *Putnam*, 16 *Abbott*, 380; *Van Deusen* agt. *Rowley*, 8 *N. Y.*, 358), but that is unnecessary to dispose of the case. Certainly, the deposit to the credit of the donee was evidence, as the undelivered assignment in the other case was of the intent formed to make a gift at some time. Coupled, too, with the declarations that the deposit had been made for the benefit of the defendant, and that the other children had been provided for, and this was intended for George, the actual deposit becomes controlling to show that it was made in view of death. The bank-book was kept by the deceased "for awhile," as the assignment was in the other, and then, two weeks before death, with the apprehension thereof, and the pains indicating its approach upon him, he leaves the box or trunk containing the book with a friend, with an express and clear injunction to give it to the defendant, and to no one else, in case of death; that he intended it for him, and him alone. It is true he retained the key of the box, as the donor in the other retained partial control by a delivery to his wife, accompanied by a declaration that he might recall the gift if his needs so required, because he may have thought, as the donor in the other case did, that it was "better to keep it for the present," because he did not know "how much longer" he might "last, or what may happen, or whether" he might

"not need it;" but he did leave the box itself, which contained the book, with positive directions to deliver to defendant in case of death. The delivery could be made, and the possession of the book obtained without the key; that was not necessary to enable the party who was interested in the bequest from fully executing it (*Penfield* agt. *Thayer*, 2 *E. D. Smith*, 305).

The case of *Sessions* agt. *Moseley* (4 *Cushing*, 87) is also in point. Without, however, going over that case, but simply referring to it, it is clear, from the deposit made, as the declarations of deceased show, with intent to give the money to George in case of death, and the leaving the box with a friend, to be delivered when such death was expected, that there was a valid gift to the defendant, which must be upheld.